[Civ. No. 22876. Second Dist., Div. Two. June 10, 1958.]

HERMAN E. HETZEL, Appellant, v. FRANCHISE TAX BOARD, Respondent.

Riley & Hall and B. H. Neblett for Appellant.

John O. Paulston, as Amicus Curiae on behalf of Appellant.

Edmund G. Brown, Attorney General, James E. Sabine and Irving H. Perluss, Assistant Attorneys General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

KINCAID, J. pro tem.*—Appellant (hereinafter called Hetzel) sues for a refund of $500 paid to the Franchise Tax Board (hereinafter called the Tax Board) on account of the principal of additional personal income taxes of $14,330.11 for the calendar year 1951.

The appeal is on the judgment roll from a judgment dismissing the complaint. The record consists of the complaint, answer, appellant's motion for judgment on the pleadings, and respondent's countermotion for judgment on the pleadings. Appellant's motion was denied and respondent's motion granted, dismissing the complaint.

The undisputed material facts are as follows:

During the year 1951 Hetzel was engaged in the bookmaking business in the city of San Diego, California. Bookmaking in 1951 was illegal in the State of California under the provisions of section 337, subdivision (a) of the Penal Code. Except for an item of income from a trust amounting to $18.68 his bookmaking activities were his only source of income. Hetzel on his California personal income tax return for 1951 reported the amount of $15,859.49 as net profit from his bookmaking business. On a supporting schedule attached to the return he reported winnings of $482,829.60, losses of $466,970.11, and a net profit of $15,859.49. No deductions other than the wagering losses were claimed on the return.

The Tax Board, in auditing Hetzel's return for 1951, re-

---

*Assigned by Chairman of Judicial Council.

computed his net income by disallowing all wagering losses sustained subsequent to the effective date of section 17359 of the Revenue and Taxation Code Personal Income Tax Law, effective May 3, 1951. This adjustment increased his income to $257,905.63 and resulted in additional assessment against him in the amount of $14,330.11.

Hetzel filed a protest with the Tax Board as to the proposed additional assessment, which protest was denied and thereafter he filed an appeal with the State Board of Equalization. Hetzel's contentions were rejected by that board. On October 27, 1955, he paid $500 on account of the principal of the additional tax assessed in the amount of $14,330.11 for the taxable year 1951 which said amount was then and there accepted by the Tax Board. Thereafter, on December 27, 1955, he filed with the Tax Board a claim for refund in the amount of $500. The Tax Board failed to take action on the claim within six months after it was filed. Hetzel considered the claim disallowed, as prescribed in section 19085 of the Revenue and Taxation Code, and filed this action.

In considering the principal questions presented by this appeal, we have before us certain provisions of the personal income tax law contained in the Revenue and Taxation Code of the State of California. Chapter 4 provides: "Deductions from Gross Income. Article 1. Items Deductible . . . § 17308. . . . Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions."

The statute was adopted following the 1934 congressional enactment of the provision which became section 23(h) of the Internal Revenue Code of 1939 and is in the identical language of such enactment.

In 1951 section 17359 was added by the Legislature as a part of chapter 4 under article 2. "Items not Deductible . . . § 17359. . . . In computing net income no deductions shall be allowed to any taxpayer on any of his gross income derived from illegal activities as defined in Chapters 9, 10, or 10.5 of Title 9 of Part 1 of the Penal Code of California; nor shall any deductions be allowed to any taxpayer on any of his gross income derived from any other activities which tend to promote or to further, or are connected or associated with, such illegal activities." (Added by Stats. 1951, p. 496, effective May 3, 1951.)[1]

---

[1] By virtue of Statutes 1955, chapter 939, effective June 6, 1955, section 17308 was renumbered as section 17206, subdivision (d), and section 17359 was renumbered as section 17297 of the Revenue and Taxation Code.

As many of the provisions of the federal and California income tax laws are identical, the latter being in large part based upon the former, we may first consider the pertinent federal provision and thereafter the California statutes.

Prior to the enactment of section 23(h) in 1934 the Board of Tax Appeals had decided that gains from illegal wagering constituted income only to the extent that they exceeded wagering losses. (*James P. McKenna* (1925), 1 B.T.A. 326; *Mitchell M. Frey, Jr., Ex'rs* (1925) 1 B.T.A. 338.)

The effect of the enactment of section 23(h) was determined in *Humphrey* v. *Commissioner of Internal Revenue* (1947), 162 F.2d 853, cert. den. In that case the taxpayer was not a professional gambler but had engaged in three wagering transactions. On two winning bets he had made $2,140, but on a losing bet he had lost $3,000. The court held that the $2,140 was gross income and that $2,140 of the $3,000 loss constituted an allowable deduction under section 23(h). The court said (p. 855) : ". . . We need not go behind section 23 as it appears therein. It reads: 'In computing net income there shall be allowed as deductions . . . (h) Wagering Losses. Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions'. . . . Wagering losses are made a class to themselves and 'shall be allowed as deductions,' but 'only to the extent of gains from such transactions.' No longer need it be inquired whether the wagers were illegal so that the loss need not have been paid; nor what the state of mind of the taxpayer was as respects his purpose to win a profit. All wagers are by Par. (h) gathered into a class of their own and dealt with as the paragraph states."

It is apparent, accordingly, that by the enactment of section 23(h), Congress overruled the McKenna and Frey cases and specifically changed the definition of gross income there utilized. Thus, gambling losses up to the amount of gambling winnings, formerly considered as *exclusions* from gross income under the McKenna and Frey cases, were now by statutory mandate to be treated as *deductions* from gross income. Moreover, the gambler's use of losses as deductions was limited to his gambling winnings under section 23(h). We find no basis of distinction in applying the rule of the Humphrey case to a professional gambler such as Hetzel as well as to the casual gambler.

Section 17308 of the Revenue and Taxation Code of California, having been taken verbatim from section 23(h)

of the federal income tax law, the same rule applies for the imposition of income taxes in this State. Accordingly, wagers lost by gamblers must be regarded as deductions rather than as exclusions from gross income. Following the adoption of section 17308 and prior to May 3, 1951, the effective date of section 17359 of the Revenue and Taxation Code, the winnings and losings of all gamblers, whether such wagers were made at legally licensed establishments or by bookmakers or other illegal means, were treated accordingly for income tax purposes.

By the enactment of section 17359 the Legislature of this state manifestly has expressed its intention to segregate from items deductible, another class of income for income tax purposes. In computing net income it prescribes the allowance of deductions to a taxpayer on any of his gross income derived from certain defined illegal activities or from any other activities which tend to promote or to further or are connected or associated with, such activities. Those defined illegal activities are set forth in chapter 9 (lotteries), chapter 10 (gaming, including bookmaking), and chapter 10.5 (touting and unlicensed acts relating to horse racing), of title 9, part 1 of the Penal Code of California.

By enacting section 17359 the Legislature has expressed its clear intention not only that that portion of the gross income of a bookmaker which represents his illegal winnings is the total of such winnings without exclusion of bets lost, but also that bets lost by a bookmaker are not deductible from his gross income for income tax purposes. There is no provision comparable to section 17359 in the federal income tax law.

No question is raised here as to the power of both the Congress and the state Legislature to set apart wagering losses as a separate class of income deduction.

We are here concerned with the power of a state to levy a tax which is inherent and requires no special constitutional grant. Thus, it was said of the California Constitution in *Roth Drug, Inc.* v. *Johnson* (1936), 13 Cal.App.2d 720, 740 [57 P.2d 1022] : ''The Constitution is deemed to be a reservation of authority rather than a delegation or grant of power, and, consequently, the legislature may be authorized to enact laws which are otherwise valid, when the Constitution fails to prohibit such enactments.''

Apart from the inherent power of the Legislature to tax, section 11 of article XIII of the California Constitution buttresses the power of the Legislature to levy income taxes

in extremely broad language as follows: "Income taxes may be assessed to and collected from persons, corporations, joint-stock associations, or companies resident or doing business in this State, or any one or more of them, in such cases and amounts, and in such manner, as shall be prescribed by law."

Thus the Legislature has the power in taxing income derived from wagering transactions to disallow any deduction for losses sustained in defined illegal activities. As said by Mr. Justice Douglas in the recent United States Supreme Court case of *Commissioner* v. *Sullivan* (26 Law Week 4182, _____) : "Deductions are a matter of grace and Congress can, of course, disallow them as it chooses." He then points out that under the treasury regulations adopted pursuant to the United States Internal Revenue Code normal deductions of rent and wages necessary to operate an alleged illegal gambling enterprise are deductible unless it is clear that the allowance is a device to avoid the consequences of violations of a law or otherwise contravene the federal policy expressed in a statute or regulation as in *Textile Mills Sec. Corp.* v. *Commissioner of Int. Rev.*, 314 U.S. 336 [62 S.Ct. 272, 86 L.Ed. 249].

In the latter case the court upheld a regulation forbidding the deduction of expenses for lobbying purposes. It was cited with approval in *Tank Truck Rentals* v. *Commissioner* (26 Law Week, 4179), decided by the United States Supreme Court in conjunction with *Commissioner* v. *Sullivan, supra,* and *Hoover Motor Express Co.* v. *United States* (26 Law Week, 4181, _____).

In the Tank Truck Rentals case the court was considering the question as to whether fines paid by interstate motor carriers for violation of state maximum weight laws were deductible business expenses for federal tax purposes. In holding that, even without a prohibitory statute, such fines were not properly deductible, the court, speaking through Mr. Justice Clark, said: "It is clear that the Congress intended the income tax laws 'to tax earnings and profits less expenses and losses, (citation),' carrying out a broad basic policy of taxing 'net, not . . . gross, income. . . .' (Citation.) Equally well established is the rule that deductibility under section 23(a) (1) (a) is limited to expenses that are both ordinary and necessary to carrying on the taxpayer's business. (Citation.) A finding of 'necessity' cannot be made, however, if allowance of the deduction would frustrate sharply defined national or state policies proscribing particular types of con-

duct, evidenced by some governmental declaration thereof. *Commissioner of Int. Rev.* v. *Heininger* (1943), 320 U.S. 467, 473 [64 S.Ct. 249, 88 L.Ed. 171]; see *Lilly* v. *Commissioner* (1952), 343 U.S. 90, 97 [72 S.Ct. 497, 96 L.Ed. 769, 27 A.L.R. 2d 492]. This rule was foreshadowed in *Textile Mills Securities Corp.* v. *Commissioner of Int. Rev.* (1941), 314 U.S. 326 [62 S.Ct. 272, 86 L.Ed. 249], where the Court, finding no congressional intent to the contrary, upheld the validity of an income tax regulation reflecting an administrative distinction 'between legitimate business expenses and those arising from that family of contracts to which the law has given no sanction.' 314 U.S., at 339. Significant reference was made in *Heininger* to the very situation now before us; the Court stated, 'Where a taxpayer has violated a federal or a state statute and incurred a fine or penalty he has not been permitted a tax deduction for its payment.' 320 U.S., at 473.

"Here we are concerned with the policy of several States 'evidenced' by penal statutes enacted to protect their highways from damage and to insure the safety of all persons using them. Petitioner and its drivers have violated these laws and have been sentenced to pay the fines here claimed as income tax deductions. It is clear that assessment of the fines was punitive action and not a mere toll for use of the highways; the fines occurred only in the exceptional instance when the overweight run was detected by the police. Petitioner's failure to comply with the state laws obviously was based on a balancing of the cost of compliance against the chance of detection. *Such a course cannot be sanctioned, for judicial deference to state action requires, whenever possible, that a State not be thwarted in its policy. We will not presume that the Congress, in allowing deductions for income tax purposes, intended to encourage a business enterprise to violate the declared policy of a State. To allow the deduction sought here would but encourage continued violations of state law by increasing the odds in favor of noncompliance.* This could only tend to destroy the effectiveness of the State's maximum weight laws.

"This is not to say that the rule as to frustration of sharply defined national or state policies is to be viewed or applied in any absolute sense. 'It has never been thought . . . that the mere fact that an expenditure bears a remote relation to an illegal act makes it nondeductible.' *Commissioner of Int. Rev.* v. *Heininger, supra,* at 474. Although each case must turn on its own facts (citation), the test of nondeductibility

always is the severity and immediacy of the frustration resulting from allowance of the deduction. The flexibility of such a standard is necessary if we are to accommodate both the congressional intent to tax only net income, *and the presumption against congressional intent to encourage violation of declared public policy.*

"*Certainly the frustration of state policy is most complete and direct when the expenditure for which deduction is sought is itself prohibited by statute.* (Citation.)" (Italics supplied.)

The State of California, by adopting section 17359, has specifically declared a policy against allowance by way of income tax deductions, of income derived from defined illegal activities. Such income is received by way of winnings and paid out as losses in direct violation and contravention of the statutes contained in chapter 10, title 9, part 1 of the Penal Code of this state.

Judicial deference requires that the state not be thwarted in its policy of discouraging continued violations of the state law by refusing the allowance by way of income tax deductions of income received from such defined illegal activities. As indicated by Mr. Justice Clark such an allowance would but encourage continued violations of the law by increasing the odds in favor of noncompliance.

We find no merit in the argument of appellant that section 17359 is violative of the equal protection clause of the 14th Amendment of the Constitution of the United States or of article I, section 11, or article IV, sections 24, 25, of the Constitution of California.

Hetzel argues that section 17359, as construed and applied by respondent, is not a true tax but is a penalty for a violation of state law and as such is beyond the power of the Legislature to impose in an income tax statute. In contending that such a tax deprives him of his property without due process of law as that term is used and understood in the state or federal Constitutions he relies strongly on *United States* v. *Constantine,* 296 U.S. 287 [56 S.Ct. 223, 80 L.Ed. 233].

In *United States* v. *Smith,* 106 F.Supp. 9, the federal statute imposing an annual occupation tax on persons engaged in wagering was upheld as not contravening constitutional provisions. We are in accord with Chief Judge Yankwich in that case when he said (pp. 12-13) : "We believe that whatever force the Constantine case has is gone, and that it is no longer binding authority on this court.

"In the light of the principles just declared, there is no infirmity in the tax under attack. The tax was enacted after the extensive hearings of the Kefauver committee showed the nefarious activities of some of the persons engaged in wagering. If the Congress, by taxing the activity sought to discourage it, it acted within its constitutional powers. For, as amply appears, the Congress may use the power to tax in order to bear more heavily on certain activities as it has done in taxing state bank issues of circulating notes, dealings in narcotics, firearms and even the sale of harmless oleomargarine.

"The wise words of Mr. Justice Cardozo's dissent in *United States* v. *Constantine, represent correctly the law as it is today*:

" 'Congress may have held the view that an excise should be so distributed as to work a minimum of hardship; that an illegal and furtive business, irrespective of the wrongdoing of its proprietor, is a breeder of crimes and a refuge of criminals; and that in any wisely ordered polity, in any sound system of taxation, men engaged in such a calling will be made to contribute more heavily to the necessities of the Treasury than men engaged in a calling that is beneficent and lawful.

" 'Thus viewed the statute was not adopted to supplement or sanction the police powers of the states or of their political subdivisions. It was adopted for anything disclosed upon its face or otherwise, as an appropriate instrument of the fiscal policy of the nation. . . .' ''

So here the record discloses that section 17359, enacted at the 1951 legislative session, had its origin in a study by and recommendation of the Special Crime Study Commission on Organized Crime created by executive order of the Governor. This commission was directed to include in its reports "the measures considered by the commission to be appropriate for recommendation to the executive, legislative and judicial departments of the State, with the object of eradicating groups organized for unlawful purposes from this State and providing increased protection for the people of the State against the inroads of organized crime." From the study and the direct recommendations of the commission it is clear that the Legislature intended not only to bring increased revenue into the treasury of the state by way of income tax but, incidentally in so doing, to discourage and blight the nefarious activities of some persons who were directly and knowingly violating the penal statutes of the state. In so doing it acted within its constitutional powers.

We have considered the other incidental points raised by appellant and by amicus curiae but deem them of no merit and that further discussion as to them is unnecessary.

The judgment is affirmed.

Fox, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied July 2, 1958, and appellant's petition for a hearing by the Supreme Court was denied August 7, 1958. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.