[Civ. No. 631. Fifth Dist. Sept. 15, 1966.]

C. B. HALL, Plaintiff and Appellant, v. FRANCHISE TAX BOARD, Defendant and Respondent.

[Civ. No. 632. Fifth Dist. Sept. 15, 1966.]

CHARLES B. HALL, JR., et al., Plaintiffs and Appellants, v. FRANCHISE TAX BOARD, Defendant and Respondent.

[Civ. No. 633. Fifth Dist. Sept. 15, 1966.]

EDWARD F. BROWN et al., Plaintiffs and Appellants, v. FRANCHISE TAX BOARD, Defendant and Respondent.

(Consolidated Cases.)

Archibald M. Mull, Jr., for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, Ernest P. Goodman, Assistant Attorney General, Edward P. Hollingshead and Walter J. Wiesner, Deputy Attorneys General, for Defendant and Respondent.

McMURRAY, J. pro tem.*—Three actions were consolidated for trial and this is an appeal from the judgment in those actions which denied appellants tax refunds after additional assessments were levied for the years 1951 and 1952.

Appellants, the only partners in the Sacramento Novelty Company, filed partnership returns for the years 1951 and 1952. After audit, the respondent determined that neither the partnership returns nor the individual returns filed by the

*Assigned by the Chairman of the Judicial Council.

appellants for those years reported the total gross income as required by Revenue and Taxation Code section 17359 (now numbered 17297) which taxes the total gross income of certain illegal activities, disallowing any deductions from the gross figure when determining the net or taxable income. Respondent determined that appellants had reported only 30 percent of the gross, and issued notices of proposed assessments plus penalties and interest. After protests were denied by respondent, appellants appealed to the State Board of Equalization which affirmed the assessments but reduced them on the basis of a determination that the location owners who handled appellants' illegal machines were joint venturers with appellants and therefore only half of the recomputed income was attributable to the partnership and appellants. Certain penalties were also deleted.

Appellants paid the reduced assessments, filed claims for refunds. which were denied, and brought the instant actions under Revenue and Taxation Code sections 19082 to 19092. The cases all turn on the same facts, and the parties stipulated that they would be bound by the outcome of the one action which was actually tried. The matter was tried by the court sitting without a jury, and the Board of Equalization's decision was upheld.

The court found among other things that the appellants had failed to support their burden of proof to show that the determination of gross income by the Franchise Tax Board was incorrect and that appellants were entitled to the deductions which they claimed. It further found that respondent proved by a clear preponderance of the evidence that plaintiffs' income was derived from illegal gambling activities and from activities which were connected or associated with said illegal gambling activities or which tended to promote or further such activities; that appellants owned certain ''Bingo'' pinball machines which were placed in certain locations under oral joint venture agreements, and upon which the location owners made certain pay-outs for free games won, which pay-outs were reimbursed by appellants; that such machines were not illegal per se under Penal Code section 330b; that the above activities brought appellants within the operation of section 17359 of the Revenue and Taxation Code so that no business deductions of any kind were allowed, including the amount of such illegal pay-out which was found to be 40 percent of the total amount put into the machines. The ''Bingo'' machines were found to be games of chance, not skill, and certain other types of pinball machines, called flipper machines, were found

to be games of skill, as were shuffle alleys, but the court found that the latter games were associated with and connected with, and furthered, the Bingo games, so no deductions were allowed for their operation. The court found that section 17359 is constitutional as a fiscal measure, and does not constitute or purport to apply a Penal Code section.

Appellants placed, through their partnership, Sacramento Novelty Company, certain amusement devices, which they owned, in various locations either at the request of the location owner or through their own solicitation. The location owners paid various expenses such as license fees, electricity, and pay-outs. The latter comprised the bulk of the expenses. These expenses were reimbursed by appellants out of the proceeds from the machines maintained by the appellants' servicemen, the remainder, after expenses, being divided equally between the appellants and the location owners. No records were kept of how much money was put into the machines, nor what the amount of the expenses and pay-outs were. The only figure kept by appellants was their share after the split which was figured to be approximately 30 percent of the total placed in the machines, the other 30 percent going to location owners and 40 percent equalling the expenses.

■ The appellants had three different types of machines. About 70 percent of them were multiple-odds, multiple-coin, multiple-ball-type pinball machines, commonly known as "Bingo pinball machines." These machines had a number of various "features" which could be changed by inserting more coins into the coin slot. By the same procedure the odds could be changed and extra balls might be obtained depending upon a completely random selection determined by an electric reflex unit in the machine. Games could be won by obtaining certain scores, and these scores could be erased either by playing off the free games which were registered on the face of the machine or by pressing a button under the base of the machine. Pay-outs on this type of machine were common knowledge and well over half of the locations paid for free games won. When appellants or their employees came to check the coin boxes, they paid the owner's expenses and then divided the remainder. The location owner's records of expenses were double-checked with a pay-out meter inside the machine to see if the location owner was being underpaid or overpaid for his expenses. These games were games of chance and not skill; tests conducted by an expert showed that a player could not appreciably better his score whether he

played with his back to the game or faced it and used every effort, including jostling the machine, in an attempt to get a better score.

The other two types of machines were known as a "flipper pinball game" and "shuffle alleys." There seems to be no doubt that these were both games of skill, and the court found that these games were used as enticements to get the players to play the Bingo machines. This finding is supported by some evidence in the record.

■ Since deductions are a matter of legislative grace, to qualify for them, a taxpayer must show he is entitled to them. (See 26 Cal.Jur.2d, Income Taxes, § 16, pp. 255-256; 27 Am.Jur., Income Taxes, § 93, pp. 359-360.)

Section 17359 of the Revenue and Taxation Code provided: "In computing net income, no deductions shall be allowed to any taxpayer on any of his gross income derived from illegal activities as defined in Chapters 9, 10, or 10.5 of Title 9 of Part 1 of the Penal Code of California; nor shall any deductions be allowed to any taxpayer on any of his gross income derived from any other activities which tend to promote or to further, or are connected or associated with, such illegal activities."

■ In an action for a refund under Revenue and Taxation Code section 19082, the taxpayer has the burden of proof to show that he is entitled to his claim. He cannot assert error and thus shift to the state the burden to justify the tax. (*Todd* v. *McColgan*, 89 Cal.App.2d 509, 514 [201 P.2d 414].) ■ A claim for refund after assessment for additional tax under section 17359 would appear to be no different from any other refund action (see *Aronoff* v. *Franchise Tax Board*, 60 Cal.2d 177 [32 Cal Rptr. 1, 383 P.2d 409]; and *Hetzel* v. *Franchise Tax Board*, 161 Cal.App.2d 224, 226 [326 P.2d 611]), so the finding of the trial court that the burden of proof was on the appellants appears to be proper, as the taxpayer has knowledge of the nature of his own business and the amount of his legitimate deductions.

■ The fact that the standard for allowing deductions is found in a Penal Code section does not require a different burden of proof than would the usual refund action. ■ In this case the respondent appears to have carried the burden of proof sufficiently to show a prima facie illegal activity by appellants, and a justification of the amount assessed under the unreported pay-outs theory was applied. Under the evidence the trial court might well have concluded

that the Bingo pinball machines were of the type proscribed by Penal Code sections 330b and 330.1[1]; it did not, however, so find, which in no way affects the ultimate result in this

---

[1]Section 330b:

"(1) It is unlawful for any person to manufacture, repair, own, store, possess, sell, rent, lease, let on shares, lend or give away, transport, or expose for sale or lease, or to offer to repair, sell, rent, lease, let on shares, lend or give away, or to permit the operation of, or for any person to permit to be placed, maintained or kept in any place, room, space or building owned, leased or occupied by him or under his management or control, any slot machine or device as hereinafter defined, or to make or to permit to be made with any person any agreement with reference to any slot machine or device, as hereinafter defined, pursuant to which the user thereof, as a result of any element of hazard or chance or other outcome unpredictable by him, may become entitled to receive any money, credit, allowance, or thing of value or additional chance or right to use such slot machine or device, or to receive any check, slug, token or memorandum entitling the holder to receive any money, credit, allowance or thing of value; provided, however, that this section, insofar as it relates to owning, storing, possessing, or transporting any slot machine or device as hereinafter defined, shall not apply to any slot machine or device as hereinafter defined, located upon or being transported by any vessel regularly operated and engaged in interstate or foreign commerce, so long as such slot machine or device is located in a locked compartment of the vessel, is not accessible for use and is not used or operated within the territorial jurisdiction of this State.

"(2) Any machine, apparatus or device is a slot machine or device within the provisions of this section if it is one that is adapted, or may readily be converted into one that is adapted, for use in such a way that, as a result of the insertion of any piece of money or coin or other object, or by any other means, such machine or device is caused to operate or may be operated, and by reason of any element of hazard or chance or of other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money, credit, allowance or thing of value or additional chance or right to use such slot machine or device, or any check, slug, token or memorandum, whether of value or otherwise, which may be exchanged for any money, credit, allowance or thing of value, or which may be given in trade, irrespective of whether it may, apart from any element of hazard or chance or unpredictable outcome of such operation, also sell, deliver or present some merchandise, indication of weight, entertainment or other thing of value.

"(3) Every person who violates this section is guilty of a misdemeanor.

"(4) It is expressly provided that with respect to the provisions of Section 330b only of this code, pin ball, and other amusement machines or devices which are predominantly games of skill, whether affording the opportunity of additional chances or free plays or not, are not intended to be and are not included within the term slot machine or device as defined in said Section 330b of this code."

Section 330.1:

"Every person who manufactures, owns, stores, keeps, possesses, sells, rents, leases, lets on shares, lends or gives away, transports or exposes for sale or lease or offers to sell, rent, lease, let on shares, lend or give away or who permits the operation of or permits to be placed, maintained, used or kept in any room, space or building owned, leased or occupied by him or under his management or control, any slot machine or device as hereinafter defined, and every person who makes or permits to be made with any person any agreement with reference to any slot machine or

matter. The clear provisions of Penal Code section 330a[2] were shown to have been violated by substantial evidence introduced by the respondent. It would appear that the respondent was correct in adding one-half of the estimated pay-outs to appellants' gross income and disallowing any business deduction therefrom on all the machines. The appellants were

device as hereinafter defined, pursuant to which agreement the user thereof, as a result of any element of hazard or chance, may become entitled to receive any thing of value or additional chance or right to use such slot machine or device, or to receive any check, slug, token or memorandum, whether of value or otherwise, entitling the holder to receive any thing of value, is guilty of a misdemeanor and shall be punishable by a fine of not more than five hundred dollars ($500) or by imprisonment in the county jail not exceeding six months or by both such fine and imprisonment. A slot machine or device within the meaning of Sections 330.1 to 330.5, inclusive, of this code is one that is, or may be, used or operated in such a way that, as a result of the insertion of any piece of money or coin or other object such machine or device is caused to operate or may be operated or played, mechanically, electrically, automatically or manually, and by reason of any element of hazard or chance, the user may receive or become entitled to receive any thing of value or any check, slug, token or memorandum, whether of value or otherwise, which may be given in trade, or the user may secure additional chances or rights to use such machine or device, irrespective of whether it may, apart from any element of hazard or chance also sell, deliver or present some merchandise, indication of weight, entertainment or other thing of value.''

[2]Section 330a:

''Every person, who has in his possession or under his control, either as owner, lessee, agent, employee, mortgagee, or otherwise, or who permits to be placed, maintained or kept, in any room, space, inclosure or building owned, leased or occupied by him, or under his management or control, any slot or card machine, contrivance, appliance or mechanical device, upon the result of action of which money or other valuable thing is staked or hazarded, and which is operated, or played, by placing or depositing therein any coins, checks, slugs, balls, or other articles or device, or in any other manner and by means whereof, or as a result of the operation of which any merchandise, money, representative or articles of value, checks, or tokens, redeemable in, or exchangeable for money or any other thing of value, is won or lost, or taken from or obtained from such machine, when the result of action or operation of such machine, contrivance, appliance, or mechanical device is dependent upon hazard or chance, and every person, who has in his possession or under his control, either as owner, lessee, agent, employee, mortgagee, or otherwise, or who permits to be placed, maintained or kept, in any room, space, inclosure or building owned, leased or occupied by him, or under his management or control, any card dice, or any dice having more than six faces or bases each, upon the result of action of which any money or other valuable thing is staked or hazarded, or as a result of the operation of which any merchandise, money, representative or article of value, check or token, redeemable in or exchangeable for money or any other thing of value, is won or lost or taken, when the result of action or operation of such dice is dependent upon hazard or chance, is guilty of a misdemeanor, and shall be punishable by a fine not less than one hundred dollars nor more than five hundred dollars, or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment.''

assessed on a theory of joint venture for one-half of pay-outs on the machines.

A joint venture is an agreement to share profits and expenses on one or more transactions and can be created by either oral agreement or may be inferred from acts or conduct. (*Nelson* v. *Abraham,* 29 Cal.2d 745 [177 P.2d 931].)

Appellants urge that there was no evidence of any oral agreement, but the conduct here certainly supports an inference of tacit agreement and supports the court's findings that there was, in fact, a joint venture relationship between appellants and the operators of the various locations. The acts or conduct revealed in the record support a finding of joint venture. (*Universal Sales Corp.* v. *California Press Mfg. Co.,* 20 Cal.2d 751 [128 P.2d 665].)

In *Hetzel* v. *Franchise Tax Board, supra,* 161 Cal.App.2d 224, 227-228, the court points out that section 17308 of the Revenue and Taxation Code of California having been taken verbatim from a section of the federal income tax law, the same rules apply for imposition of income taxes in the state as under the federal laws, and that wagers lost by gamblers may be regarded as deductions rather than exclusions from gross income. By the enactment of section 17359, the Legislature created another class of income for income tax purposes. In computing net income, it proscribes the allowance of deductions to a taxpayer on any of his gross income derived from certain illegal activities, or from activities which tend to promote or further such activities.

The fact that the flipper pinball machines and shuffle alley games were not games of chance but were games of skill, and were specifically found to be so by the court, does not deprive the court of the power to find that because of the "unitary nature" of the appellants' business and the fact that they tended to promote the illegal activity of appellants, the income therefrom would also be similarly assessed and would be nondeductible. The appellants could have shown with some certainty what income and what expenses were allocable to the legal machines which they had in various locations; they did not do so.

The appellants vigorously urge that section 17359 was unconstitutional. This, however, is not the case. *Hetzel* v. *Franchise Tax Board, supra,* 161 Cal.App.2d 224, 231, holds that section 17359 does not deny equal protection nor does it act as a penal statute. The group of illegal activities defined gives rise to a valid classification distinct from ordinary business; additionally, it is a valid fiscal measure and not an

attempt to circumvent penal statutes. The cases of *United States* v. *Kahriger,* 345 U.S. 22 [73 S.Ct. 510, 97 L.Ed. 754]; and *Lewis* v. *United States,* 348 U.S. 419 [75 S.Ct. 415, 99 L.Ed. 475], support the position that a penal provision of one type or another may be used as a valid basis for tax purposes so long as the avowed purpose is fiscal in nature. ■ Tax statutes can be used to serve incidental public policy purposes as long as they are fiscally oriented. Indeed, the effect of Penal Code violations on tax refunds has been approved in this state in *Schur* v. *Johnson,* 2 Cal.App.2d 680 [38 P.2d 844], and *Asher* v. *Johnson,* 26 Cal.App.2d 403 [79 P.2d 457]. ■ Here, there is no constitutional provision which would forbid the action of the respondent.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

A petition for a rehearing was denied October 13, 1966, and appellants' petition for a hearing by the Supreme Court was denied November 9, 1966.