[Civ. No. 13178. Third Dist. June 16, 1972.]

ANAHEIM UNION WATER COMPANY, Plaintiff and Respondent, v. FRANCHISE TAX BOARD, Defendant and Appellant.

## COUNSEL

Evelle J. Younger, Attorney General, Ernest P. Goodman, Assistant Attorney General, and John J. Klee, Jr., Deputy Attorney General, for Defendant and Appellant.

Wright, Finley & Behrens, Dudley K. Wright and Robert S. Benner for Plaintiff and Respondent.

## OPINION

**MORONY, J.**[*]—This case involves the taxation of a mutual water company under the provisions of the California franchise tax law relating to cooperative associations. Such an association is allowed certain special deductions in computing its taxable income. All income from its business activities for or with the association's members or on a nonprofit basis with nonmembers is excludable from its gross income. However, the expenses incurred in producing such excludable gross income are not deductible in computing its taxable net income. (Rev. & Tax. Code, §§ 24401, 24405, 24421 and 24425.)

For a number of years plaintiff Anaheim Union Water Company elected to include in its gross income all the income it received which otherwise was deductible as being derived from its business activities for or with the association's members or on a profit basis with nonmembers. Hence, since it did not claim a special deduction for such income, it claimed as deductions all expenses incident to the production of such income. Such expenses were disallowed by the Franchise Tax Board (after excluding the appropriate income). Thereupon, the plaintiff paid the taxes and brought

---

[*]Assigned by the Chairman of the Judicial Council.

this suit to obtain refund of certain taxes (and interest thereon) previously paid for the years 1952-1965.

The trial court granted plaintiff's motion for summary judgment. The defendant appeals, contending (1) that the income and expenses of a mutual or cooperative association from its member and nonprofit non-member business must be excluded[1] from the computation of the franchise tax on such association, and (2) that the amount of interest awarded by the judgment is erroneous.

## FACTS

On July 19, 1968, plaintiff filed its complaint for refund of taxes and interest paid. The affidavit in support of the motion for summary judgment, given by L. A. Peterson, secretary-treasurer of plaintiff, established that on January 23, 1967, plaintiff paid to defendant, under protest, the sum of $77,133.73, and, on January 4, 1968, claimed a refund in the amount of $76,182.89, representing a deficiency of $53,880.31, plus interest of $22,302.58. During the years in question, namely income years 1952 through 1965, plaintiff was engaged in the business of leasing real properties for various purposes, and, in addition, was engaged in the business of selling irrigation water to its shareholders and to nonshareholders. Plaintiff's retained earnings and profits for each of the years show that plaintiff suffered an accumulated reduction in its retained earnings and profits from $72,014.19 at January 1, 1952, to $32,268.92 at December 31, 1965. Operating losses are the reason for this reduction.

In computing its taxable income, plaintiff did not elect to take a deduction as provided in article 2, chapter 7, part II, of division 2 (i.e., § 24401 et seq.) of the Revenue and Taxation Code,[2] but instead included its income received from the sale of water in its gross taxable income. It is clear from the arguments presented below and on appeal that since plaintiff suffered high losses in its water business, it was attempting to deduct its expenses that had been incurred in producing its water business income, said income being considered by defendant as resulting from or arising out of plaintiff's business activities for or with plaintiff's members or on a nonprofit basis with nonmembers and therefore excludable from gross income under sections 24401 and 24405. Plaintiff conceded, for the purpose of summary judgment, that it is a mutual or cooperative association within the meaning of section 24405. In disallowing plaintiff's

---

[1]Except for the years 1955 and 1956, as to which years defendant concedes plaintiff is entitled to a refund.

[2]Unless otherwise specified, all code references will be to the Revenue and Taxation Code.

request for a refund, defendant claimed that business conducted with nonmembers on a profit basis was taxable as such *regardless* of any loss on member and nonprofit nonmember business.

The parties thus initially placed into contention the construction of the provisions of section 24401, which states that in addition to the deductions provided in article 1, "there *shall be allowed* as deductions in computing taxable income the items specified in this article" (italics added), and section 24405 which provides for the deduction of *all* income of cooperative or mutual associations, which income results from or asises out of business activities with members, or with nonmembers when done on a nonprofit basis. The court phrased the question as whether, under section 24401, plaintiff was *required* to deduct and thus exclude its income from its business under section 24405, or whether plaintiff could choose to ignore section 24405, and include its cooperative or mutual association business income in its gross income for taxation purposes.[3]

In a very carefully prepared and reasoned preliminary opinion, the trial court found that the words "shall be allowed" of section 24401 is optional, and that plaintiff could choose not to take the deduction as provided in section 24405. However, the court felt the resolution of this question did not determine the issue on the motion for summary judgment, but instead raised the further question of whether, once plaintiff chose to ignore the deduction provided under section 24405, does it follow that plaintiff may deduct *expenses* allocable to such income in face of the prohibitions of sections 24421 and 24425. These sections provide that in computing net income, no deduction shall be allowed for any amount otherwise allowable as a deduction which is allocable to one or more classes of income "not included in the measure of the tax imposed by this part . . . ." Following the parties' further briefing and argument, the court deemed that under section 24425, any income included in the gross income of a corporation "measures the tax," and felt that since plaintiff did not deduct its member and nonprofit income (§ 24405), but instead included such income in its gross income, such member and nonprofit income was included in the "measure of the tax." The court concluded that section 24425 did not apply to prohibit the deduction of expenses against such income. Summary judgment for plaintiff was granted accordingly.

---

[3]Defendant concedes on appeal that summary judgment was properly granted for the tax years 1955 and 1956 in that the exclusion in section 24405 did not apply to mutual *water* companies during those years.

Defendant contends that to compute "net income" under section 24341, plaintiff is required under sections 24401 and 24405 to subtract from "gross income" its income from its member business and from its nonprofit business with nonmembers; and that, therefore, it follows that under sections 24421 and 24425, plaintiff cannot deduct expenses incurred in producing its income from its member business and its nonprofit business with nonmembers. To maintain this position, defendant insists that plaintiff has no right to elect not to have section 24405 apply, and thus that the court erred in finding to the contrary.

The privilege of exercising a corporate franchise in this state is taxable. The tax is measured by the corporation's net income. (§ 23151.) However, certain types of corporations are given tax benefits not accorded to other corporate taxpayers. Hence, in determining net income there are certain deductions allowed. (§ § 24341 and 24401.) One of those special deductions applying to cooperative or mutual associations is found in section 24405 which provides, in pertinent part, that:

"In the case of other associations organized and operated in whole or in part on a co-operative or a mutual basis, *all income resulting from or arising out of business activities for or with their members carried on by them or their agents; or when done on a nonprofit basis for or with nonmembers;* provided, however, that the deduction allowable under this section shall not apply to such co-operative or mutual associations whose income is principally derived from the sale in the regular course of business of tangible personal property other than water, agricultural products, or food sold at wholesale." (Italics added.)

On the other hand, certain specified items are nondeductible in computing taxable net income. (§ 24421.) One of these nondeductible items is set forth in section 24425, which provides that:

"Any amount otherwise allowable as a deduction which is allocable to one or more classes of income not included in the measure of the tax imposed by this part, regardless of whether such income was received or accrued during the income year."

In *Woodland Production Credit Assn.* v. *Franchise Tax Board* (1964) 225 Cal.App.2d 293 [37 Cal.Rptr. 231], this court again had before it a case involving section 24405 in which there was no direct precedent. In Justice Friedman's opinion written for the court he discussed the "pivotal concept" of section 24405 as follows (at pp. 298-299): "Cooperative corporations are subject to the California Franchise Tax Law, but are permitted a special deduction of income arising out of business

activity carried on with members or conducted on a nonprofit basis with nonmembers. (Rev. & Tax. Code, §§ 24404-24406; *Security-First Nat. Bank* v. *Franchise Tax Board*, 55 Cal.2d 407, 423-424 [11 Cal.Rptr. 289, 359 P.2d 625]; McLaren and Butler, California Tax Laws of 1929, pp. 114-115; Traynor, *National Bank Taxation in California*, 17 Cal.L. Rev. 456, 493-494.) Income from profit-making activities with nonmembers is excluded from deductibility and thus forms part of the tax base. . . .

"*The pivotal concept in section 24405 is that of income from business activities.* The subsidiary notions of business done (a) for or with members, or (b) on a nonprofit basis for or with nonmembers, are modifications or descriptions of this primary concept. In a general sense, any and all of the cooperative's transactions, including investment in interest-bearing securities, might be termed 'business activities.' The statutory phrase, however, must play a role in fulfillment of the statutory purpose. *This particular statute is aimed at giving a tax benefit to cooperative associations. There must, then, be some public policy which motivated this exercise of legislative beneficence.*

"*The tax exclusion or deduction of cooperatives' earnings rests on the theory that such earnings are not profits, but rather savings produced for patrons through a pooled effort.* (6 Mertens, Law of Federal Income Taxation, pp. 131-144; Packel, Law of Cooperatives (3d ed.) pp. 319-321; Patterson, The Tax Exemption of Cooperatives, pp. 11, 14, 58-69; Joplin, *Taxation of Cooperatives Under the 1962 Revenue Act*, 41 Texas L. Rev. 908-909; cf. Cal. Corp. Code, § 12201.) *Although these savings are usually distributed as patronage dividends, they constitute in theory a downward adjustment in the price of the product the cooperative sells or the service it furnishes to its patrons; or in an upward adjustment in the price of the product it markets for them.* In the parlance of the corporation franchise tax law these patrons are referred to as 'members' and as 'nonmembers' of the association. *Transactions between the cooperative and its patrons, or which it conducts as their agent, constitute its business activity, the very objective of its existence.*

". . . Generally, under the federal income tax law, and under sections 24404 and 24406 of the California Revenue and Taxation Code, undistributed income forms part of the tax base, and only distributed income is deductible. (See Note 8 A.L.R.2d 925; Couper, *The Farmer, The Cooperative and The Commissioner*, 7 Hastings L.J. 143, 148-149; Joplin, *op. cit.*, 41 Texas L. Rev. at pp. 911-916.) In contrast, *section 24405 permits the tax deduction even though the income may be accu-*

*mulated and added to capital. In a sense, undistributed income of the cooperative belongs to its members, but their individual interests are too remote and contingent to be recognized for tax purposes.* (See *Eisner* v. *Macomber*, 252 U.S. 189 [40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570]; *Caswell's Estate* v. *Commissioner of Internal Revenue*, 211 F.2d 693.) *The policy of the deduction provision to permit exclusion of patrons' savings or price adjustments is especially irrelevant to income not derived from transactions between the organization and its patrons and which, for all that the law requires, may remain undistributed.*" (Italics added.)

The question of deductions of operating expenses as well as of gross income was before the court in *Security-First Nat. Bk.* v. *Franchise Tax Bd.* (1961) 55 Cal.2d 407, 423-424 [11 Cal.Rptr. 289, 359 P.2d 625]: "It is plaintiff's position that cooperatives, in determining their net income, may deduct all operating expenses and are also, with respect to business done with members and done with nonmembers on a nonprofit basis, entitled to a deduction of the gross income under subdivisions (1) and (m) of section 8 of the act, which provide that cooperatives may deduct all income from such business.

"The determination of net income of cooperatives is important primarily for the purpose of ascertaining the franchise tax which the cooperatives themselves must pay and only indirectly for the purpose of computing the bank tax rate. *The method of calculation urged by plaintiffs would give cooperatives an unwarranted benefit closely akin to a double deduction because they would be entitled to deduct, in addition to gross income from membership and nonprofit business, all operating expenses, which would include those attributable to the production of that income. Thus cooperatives would always have a loss from their cooperative business in the amount that expenses were incurred in carrying on that business, and this loss would substantially, if not entirely, offset income from profit-making activities, which should be taxable.* In the present cases the trial court found that under the method of calculation urged by plaintiffs all cooperatives would have net losses for the years in question.

"*The commissioner's method of calculating the income of cooperatives, on the other hand, has the sensible result of treating them, so far as they engaged in profit-making business, like any other corporation subject to the franchise tax.* He treated the deduction permitted by subdivisions (1) and (m) of section 8 as the gross income from member and nonprofit business minus the expenses incurred in producing that income. This treatment led to the result that, as to member and nonprofit business,

the cooperatives had no income or loss and that net income or loss depended upon the difference, if any, between the gross income from activities with nonmembers on a profit basis and the business expenses allocable to the production of such income." (Italics added.)

██ The case now before this court appears to be one of first impression in this state. The question presented is whether a section 24405 taxpayer is entitled to deduct expenses attributable to producing what otherwise is nontaxable income just because it elects not to claim the deduction authorized by section 24405. It appears to this court that the answer lies in the interpretation to be placed on section 24425 regardless of whether section 24405 deductions be deemed optional or mandatory.

To interpret section 24425 properly one must give consideration to its purpose or design. This was discussed in *Burton E. Green Inv. Co.* v. *McColgan* (1943) 60 Cal.App.2d 224 at page 233 [140 P.2d 451] as follows:[4]

"Further proof of the legislative intention is to be found in section 9 subdivision (d) which was also enacted in 1937 when the phrase 'included in the measure of the tax' first appeared in section 8 subdivision (h). Section 9 subdivision (d) reads as follows:

" 'Section 9. In computing net income no deduction shall be allowed for:

" '(d) Any amount otherwise allowable as a deduction which is allocable to one or more classes of income not included in the measure of the tax imposed by this act. . . .'

"*The language there used refers to income which is excluded from the computation of the franchise tax. That section was designed to prevent corporations from deducting amounts properly allocable to income but not subject to taxation under the Act.* The language of section 9 subdivision (d) leaves no doubt that 'income' is used in the sense of gross income not subject to the franchise tax. 'Net income' could not have been in the mind of the legislature in the phrase, 'allocable to . . . income not included in the measure of the tax imposed. . . .' Deductions are not *allocable* [original italics] to net income. A deduction expires the moment it is subtracted from the gross income. *Throughout the Act we are constantly reminded that some deductions are allocable to certain gross incomes. . . .*" (Italics added.)

---

[4]The language of section 9(d) is substantially identical to the provisions of section 24425.

However, a more recent expression of judicial opinion concerning sections 24425 is found in *Great Western Financial Corp.* v. *Franchise Tax Bd.* (1971) 4 Cal.3d 1, 5-6 [92 Cal.Rptr. 489, 479 P.2d 993]: "*Section 24425 deals with deduction of expenses. Deductions may be allowed or withheld by the Legislature as it sees fit* (*Southern Service Co., Ltd.* v. *Los Angeles* (1940) 15 Cal.2d 1, 11 [97 P.2d 963]; *Hetzel* v. *Franchise Tax Board* (1958) 161 Cal.App.2d 224, 229 [326 P.2d 611]) *and such deductions, like credits and exemptions, are to be narrowly construed against the taxpayer* (*Miller* v. *McColgan* (1941) 17 Cal.2d 432, 441 [110 P.2d 419, 134 A.L.R. 1424]; *Burnham* v. *Franchise Tax Board* (1959) 172 Cal.App.2d 438, 445 [341 P.2d 844]). Section 24402, on the other hand, has no effect upon deductibility of expenses. It deals simply with the narrow question of the inclusion of certain dividend income in the measure of the tax of the dividend recipient. Its purpose is to prevent the imposition of a second tax upon the stream of income leading to the dividend. (12 Marshall, Cal. Practice, State and Local Taxation (1969) p. 168.)

"In this instance we are not concerned with section 24402, or any section of the law under which taxpayer's income was eliminated to arrive at the' net figure used in computing the measure of its tax. *Section 24425 is operative whenever income is eliminated from the measure of the tax under any authority or for any purpose; it states with incontestable clarity that items are nondeductible when allocable to income 'not included in the measure of the tax.'* The dividends in question were not included in income used to measure plaintiff's tax. It follows that the expense items are nondeductible.

"          .    .    .    .    . '    .    .    .    .    .    .    .    .    .    .    .    .    .

"Judge Marshall, in his definitive text on taxation (12 Marshall, Cal. Practice, State and Local Taxation, *supra*, § 646 (C.(8)), p. 180) describes the applicable principle this way: '*Any amount, otherwise allowable as a deduction, which is allocable to income not included in the measure of the corporate tax, is not deductible. The purpose of this section is to prevent a double exemption. . . .*" (Italics added.)

Because of the provisions of section 24405, the state does not have the option of including plaintiff's income resulting from its business activity for which it was formed, i.e., as a mutual water company. Hence, such income is not includible in the measure of its corporate franchise tax. From this it follows that expenses incurred in connection with such nonincludible business activity are not deductible because of section 24425 provisions.

However, in this case the plaintiff would seek a choice so that it could use its expenses to offset income from profit-making activities (which should be taxable as any other corporation) whenever its cooperative or mutual business sustains a loss. Section 24405 is aimed at giving a tax benefit to cooperative or mutual associations on the theory that such earnings are not profits, but rather are savings produced for patrons through a pooled effort. (*Woodland Production Credit Assn.* v. *Franchise Tax Board, supra,* 225 Cal.App.2d at p. 298.) There is no reason to conclude, however, that cooperative or mutual associations' earnings are not profits or losses except when the association chooses to deem its earnings profits or losses for the purpose of offsetting its expenses against its otherwise taxable nonmember profit business. If a cooperative or mutual association wishes to take any deduction at all for its income derived from its member or nonmember nonprofit business, it must use the special deduction provided in section 24405, and suffer the consequences of section 24425 that prohibits the further deduction of expense items from its nonmember profit business.

Statutes must be construed in a reasonable and commonsense manner, not in a manner that would lead to absurd consequences. ■ The rule is well established that " 'where the language of a statute is reasonably susceptible of two constructions, one of which in application will render it reasonable, fair and harmonious with its manifest purpose, and another which would be productive of absurd consequences, the former construction will be adopted.' " (*City of L.A.* v. *Pac. Tel. & Tel. Co.* (1958) 164 Cal.App.2d 253, 256-257 [330 P.2d 888]; see also, *DeCelle* v. *City of Alameda* (1960) 186 Cal.App.2d 574, 582 [9 Cal.Rptr. 549].) ■ The construction placed upon these sections (24405 and 24425) by plaintiff would lead to consequences far from reasonable or logical. As stated in *Bush* v. *Bright* (1968) 264 Cal.App.2d 788, at page 792 [71 Cal.Rptr. 123]:

■ " 'Statutes must be given a reasonable and common sense construction in accordance with the apparent purpose and intention of the lawmakers—one that is practical rather than technical, and that will lead to a wise policy rather than to mischief or absurdity.' (45 Cal.Jur.2d 625-626.) ■ '[I]n construing a statute the courts may consider the consequences that might flow from a particular interpretation. They will construe the statute with a view to promoting rather than to defeating its general purpose and the policy behind it.' (*Id.,* p. 631.) . . ."

■ *"The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. (California Toll Bridge Authority* v. *Kuchel,* 40 Cal.2d

43, 53 [251 P.2d 4]; *County of Alameda* v. *Kuchel*, 32 Cal.2d 193, 199 [195 P.2d 17]; *Dickey* v. *Raisin Proration Zone No. 1*, 24 Cal.2d 796, 802 [151 P.2d 505, 157 A.L.R. 324]; 82 C.J.S., Statutes, § 321, p. 560; 45 Cal.Jur.2d, Statutes, § 126, p. 634.) ▮ *Moreover, 'every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' (Stafford* v. *Los Angeles etc. Retirement Board*, 42 Cal.2d 795, 799 [270 P.2d 12].) *If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose. (People* v. *Western Air Lines, Inc.*, 42 Cal.2d 621, 638 [268 P.2d 723].) *Such purpose will not be sacrificed to a literal construction of any part of the act. (People* v. *Ventura Refining Co.*, 204 Cal. 286, 292 [268 P. 347, 283 P. 60]; *H. S. Mann Corp.* v. *Moody*, 144 Cal.App.2d 310, 320 [301 P.2d 28]; 45 Cal.Jur.2d Statutes, § 130, p. 637.) ▮ Applying these principles, it must be concluded that plaintiff cannot prevail here." *(Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) (Italics added.)

The consequences of plaintiff's interpretation of sections 24405 and 24425 would be to give certain cooperatives and mutual associations a double benefit. Such associations would be able to deduct their member and nonmember nonprofit income in those years in which their business prospered, while in those years in which their business sustained a loss, they would be able to offset their expenses incurred in producing that income as against their nonmember profit business.

Such result could even encourage cooperative and mutual associations to operate their business activity at a loss in order to offset income from their profit-making activities. However, why should the other taxpayers of this state pay for the operating losses of a mutual water company? It is suggested that if plaintiff had not had other income from rentals, then the cost of its water services to members and nonmembers probably would have been increased to cover the cost of operations, or otherwise the plaintiff eventually would have had to cease operations due to financial problems.

The practical effect of the legislative intent now urged by plaintiff upon this court is to have the state subsidize the member and nonprofit nonmember business activity of cooperatives and mutual associations. It is difficult to believe that the Legislature ever intended such an absurd result. Obviously, the Legislature intended to favor such associations by the tax benefits provided by section 24405 but there is nothing to indicate that the Legislature intended to confer double benefits.

The summary judgment is reversed except insofar as it pertains to the years 1955 and 1956.

The summary judgment is affirmed insofar as it pertains to the years 1955 and 1956. However, the amount of interest awarded for such years is erroneous. Under section 26107, interest on any judgment of any court rendered for any overpayment of tax imposed "by this part" is 6 percent per annum upon the amount of the overpayment. The court allowed interest in the amount of 7 percent. On appeal, plaintiff does not argue in support of the 7 percent interest figure. This reviewing court has the power to modify the judgment to reflect the correct amount of interest due. (Code Civ. Proc., § 956a; *City of Newport Beach* v. *Sasse* (1970) 9 Cal.App.3d 803, 813 [88 Cal.Rptr. 476].) Hence, the judgment should be modified to reflect an interest rate of 6 percent per annum upon the refundable amount.

Friedman, Acting P. J., and Janes, J., concurred.

A petition for a rehearing was denied July 12, 1972, and respondent's petition for a hearing by the Supreme Court was denied August 30, 1972. Wright, C. J., did not participate therein.