TAYLOR, J.
 

 Plaintiffs (hereafter taxpayers) appeal from a judgment in favor of defendant, Franchise Tax Board (hereafter Board) denying them a refund of personal income taxes paid under protest to the State of California, following disallowance by the Board of a deduction or a tax credit for certain Japanese income taxes. The taxpayers contend that sections 17204 and 18001 of the Bevenue and Taxation Code, which respectively deny the deduction and credit, are unconstitutional.
 

 The facts are stipulated. The taxpayers are husband and wife residing and domiciled in California. The husband is an attorney and a partner in a firm with offices in San Francisco and Tokyo. The returns involved are for the years 1959 to 1963, inclusive. In the California income tax returns for the years mentioned, the taxpayers reported their proportionate share of the net income derived from the partnership’s Japanese office. Under the law of Japan, an income tax, similar to the California personal income tax and the federal income tax, was imposed on the net income derived from the Japanese office.
 

 Under the law of Japan, all payments for legal fees paid to the partnership’s Tokyo office by clients in Japan were subject to a 10 percent withholding system that operates in the same manner as the federal income tax withholding sys
 
 *275
 
 tem on the wages of employees in the United States. When á client is billed for legal services rendered by the partnership’s Tokyo office, he pays 90 percent of the fee directly to the partnership and the remaining 10 percent to the Japan revenue office for credit to the partnership account.
 
 [1]
 

 During the years here involved and to date, Japanese law has prohibited the conversion of Japanese yen earned in Japan to dollars for the purpose of bringing the money or goods to the United States. However, Japanese law permits the taxpayers if personally present in Japan to use their Japanese income in Japan for living and personal expenses. The taxpayers have not in fact spent any of their Japanese income. As they are “exchange non-residents’’ under Japanese law, the partnership has been prohibited from placing the funds in the names of the taxpayers or in an account for them.
 

 In their joint California personal income tax returns for the years here involved, the taxpayers included their share of the income derived from the operation of the partnership’s Japanese office in the computation of adjusted gross income. In their returns for the years 1959, 1960, 1961 and 1962, the taxpayers claimed as a deduction the amount of Japanese income tax paid as indicated above. After denial of the deductions, they paid the additional tax due, together with interest, and concurrently filed claims for refunds. In their 1963 return, the taxpayers, anticipating the disallowance of the deductions, paid the additional tax due and concurrently have filed a claim for refund, asserting that the amount of Japanese income tax should be allowed as either a deduction or a tax credit.
 
 [2]
 

 The only questions presented are whether the Board properly disallowed the deduction for 1959-1963 pursuant to see
 
 *276
 
 tion 17204 of the Revenue aud Taxation Code and the tax credit for 1963 pursuant to section 18001 of the Revenue and Taxation Code. The taxpayers contend that both statutes are unconstitutional as a tax on something other than income in violation of article XIII, section 11 of the state Constitution, a denial of equal protection, and an undue burden on foreign commerce, in violation of the federal Constitution as well as an unreasonable impediment on foreign trade, in derogation of the Treaty of Friendship between the United States and Japan.
 

 Section 17204
 
 [3]
 
 of the Revenue and Taxation Code provides, so far as pertinent: “(b) No deduction shall be allowed ior the following taxes:
 

 (i '
 

 “(2) Taxes on or according to or measured by income or profits paid or accrued within the taxable year imposed by the authority of:
 

 “ (A) The Government of the United States or any foreign country;”
 

 The taxpayers first argue that article XIII, section 11 of the state Constitution, set forth below,
 
 [4]
 
 like the Sixteenth Amendment to the federal Constitution (likewise set forth below)
 
 [5]
 
 does not authorize a tax on gross receipts, but authorizes only a tax on income, i.e., receipts less expenses.
 

 This contention overlooks the fundamental distinction between the federal Constitution as a grant of legislative power and the state Constitution as a reservation of legislative power. Thus, any unappropriated tax imposed by Congress cannot exceed the grant of power to Congress contained in the Sixteenth Amendment. In contrast, the power of the state Legislature to levy taxes is inherent and requires no special constitutional grant
 
 (Hetzel
 
 v.
 
 Franchise Tax Board,
 
 161 Cal.App.2d 224, 228 [326 P.2d 611]). Article XIII, section 11, merely buttresses the inherent power of the Legislature to levy income taxes.
 

 
 *277
 
 As stated in
 
 Roth Drug, Inc.
 
 v.
 
 Johnson,
 
 13 Cal.App.2d 720, 740 [57 P.2d 1022] : “The Constitution is deemed to be a reservation of authority rather than a delegation or grant of power, and, consequently, the legislature may be authorized to enact laws which are otherwise valid, when the Constitution fails to prohibit such enactments.” Thus, taxes enacted by the state are valid unless contrary to an express constitutional provision. There is nothing in article XIII, section 11, that purports to require a deduction or tax credit for taxes paid to foreign countries.
 

 In
 
 Roth, supra,
 
 the sales tax (a gross receipts tax) was upheld in the absence of a constitutional provision expressly authorizing the enactment of such a tax. In
 
 Hetzel, supra,
 
 the court upheld the validity of former section 17359 (now § 17297, Rev. & Tax. Code) disallowing any deduction for expenses relating to an illegal activity, and indicated that deductions were a matter of legislative grace. If the state has the power to enact a gross receipts tax and for income tax purposes to disallow certain business expenses, it clearly has the power to disallow a deduction for income taxes imposed by a foreign country.
 

 The taxpayers recognize that California need not permit the deduction of income taxes paid to another domiciliary jurisdiction, namely, the federal government, but argues that the state must allow a deduction for income tax paid to a non-domiciliary jurisdiction. They contend that the Japanese income tax here involved was integral to the earning of income and, as an expense of doing business, must be subtracted from the gross receipts in order to determine the taxable income. But the stipulation indicates that the Japanese tax was similar to the federal and state income tax and withheld under a system similar to the federal withholding system. For federal income tax purposes, state income taxes on business income are not expenses of the business deductible in computing adjusted gross income but are personal expenditures deductible from adjusted gross income to determine net taxable income only when expressly allowed by statute
 
 (Tanner
 
 v.
 
 Commissioner of Internal Revenue,
 
 45 T.C. 145, affd. 363 F.2d 36). The same principles apply here to a foreign income tax. Like the federal and state income tax, the Japanese income tax was payable because income was earned and was not an expense incurred in the production of income.
 

 The taxpayers contend that their Japanese income should
 
 *278
 
 not be taxed here as it can be spent only in Japan and can never be received or enjoyed in the United States. This is not a legitimate complaint. The partnership was no doubt aware of this fact as well as the “exchange non-resident” provisions of Japanese law, prior to establishing its Japanese office.
 

 The taxpayers next argue that section 18001 of the Revenue and Taxation Code (set forth below)
 
 [6]
 
 that denies them a tax credit for the Japanese income tax is unconstitutional. They recognize that a right to a credit for taxes paid to another jurisdiction is a matter of legislative grace that must be found in the statutes, but argue that by allowing a credit for taxes paid to sister states, and disallowing a credit for taxes paid to foreign countries, section 18001 violates the equal protection clause of the federal Constitution.
 

 There is no merit in this contention. The equal protection clause has a limited scope in relation to state taxation in view of the relatively extensive power of the states to tax. The applicable principles were summarized in
 
 Allied Stores of Ohio, Inc.,
 
 v.
 
 Bowers,
 
 358 U.S. 522, at pages 526 and 527 [3 L.Ed.2d 480, at pp. 484, 485, 79 S.Ct. 437] as follows: “The States have a very wide discretion in the laying of their taxes. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the National Government or violating the guaranties of the Federal Constitution, the States have the attribute of sovereign powers in devising their fiscal systems to ensure revenue and foster their local interests. Of course, the States, in the exercise of their taxing power, are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment. But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation. The State may impose different specific taxes upon different trades and professions and may vary the rate of excise upon various products. It is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or
 
 *279
 
 value. [Citations.] ‘To hold otherwise would be to subject the essential taxing power of the State to an intolerable supervision, hostile to the basic principles of our Government and wholly beyond the protection which the general clause of the Fourteenth Amendment was intended to assure. ’
 
 Ohio Oil Co.
 
 v.
 
 Conway, supra,
 
 281 U.S., at p. 159 [74 L.Ed. at p. 781].”
 

 The taxpayers’ contention that the distinction between taxes paid to sister states and foreign countries is palpably arbitrary, was answered in
 
 Crocker-Anglo Nat. Bank
 
 v.
 
 Franchise Tax Board,
 
 179 Cal.App.2d 591 [3 Cal.Rptr. 905], wherein the taxpayer claimed the right to a credit for taxes paid to Canada. This court (Division One) rejected an equal protection argument identical to that made here and sustained the constitutionality of the statute.
 

 Similarly, the taxpayers have failed to demonstrate that the distinction between sister states and foreign countries cannot be sustained on any set of facts that might reasonably be conceived. As pointed out by the taxpayers, the former provision allowing a credit for taxes imposed by foreign countries may have been repealed because of the administrative difficulties encountered in determining the nature of taxes imposed by foreign countries. This is certainly a reasonable basis and cannot, in and of itself, be held arbitrary.
 

 Finally, the taxpayers assert that in denying them a deduction or tax credit, sections 17204 and 18001 of the Revenue and Taxation Code violate sections 8 through 10 of article I of the federal Constitution (set forth below, so far as relevant)
 
 [7]
 
 as well as impose an unreasonable impediment on foreign trade in derogation of the 1953 Treaty of Friendship, Commerce and Navigation between the United States and Japan (4 U.S.T. 2063).
 

 The taxpayers first assert that the tax is an unconstitutional tax on their privilege of engaging in foreign commerce as they were exporters of ‘‘know how.” Their position is no different from that of a California resident who owns real property in Japan from which he receives rental income and upon which he must pay an income tax to Japan. The taxpayers are not exporters of ‘‘know how.” They receive income because they are entitled to a share of the profits generated by the partnership law office in Japan. The taxpayers are not engaged in ‘‘foreign commerce” merely
 
 *280
 
 because they receive income from a foreign source. Even if they were, it was held in
 
 Peck & Co.
 
 v.
 
 Lowe,
 
 247 U.S. 165 [62 L.Ed. 1049, 38 S.Ct. 432] that an income tax imposed on a person engaged in the export business does not violate the constitutional prohibition against taxes on exports. Furthermore, since the constitutional restriction against taxing exports is more severe than the restriction against taxing interstate and foreign commerce
 
 (Richfield Oil Corp.
 
 v.
 
 State Board,
 
 329 U.S. 69 [91 L.Ed. 80, 76 S.Ct. 156]), it necessarily follows that the present tax does not violate the commerce clause.
 

 The taxpayers have failed to indicate on what basis the denial of the deduction or tax credit which they seek, would interfere with the interchange of scientific and technical knowledge provided for in the Treaty between Japan and the United States.
 
 [8]
 
 Furthermore, article XI of the Treaty specifically deals with the subject of taxation and in no way purports to grant any right to a deduction or credit for income tax collected by Japan.
 
 [9]
 

 The judgment is affirmed.
 

 Shoemaker, P. J., and Agee, J., concurred.
 

 [1]
 

 For the years 1960, 1962 and 1963, the amounts withheld during the year exceeded the total tax due. Por the years 1959 and 1961, the amounts withheld during the year were less than the total tax liability and the difference was paid at the time oí the filing of returns for those years. During the five years here involved, less than half of the partnership’s Japanese income was subject to withholding at the source. Japanese personal income tax returns for a particular year must be filed and taxes shown to be due thereon are payable during March of the next year.
 

 [2]
 

 The difference between a deduction and a credit is significant. If a tax paid to another country is allowed as a deduction, the amount of foreign tax is subtracted from the gross income in computing the net income subject to the California lax. If the tax paid to another country is allowed as a credit, the amount of the California personal income tax is first computed without regard to the foreign tax and then from the California tax so computed, the foreign tax is subtracted to determine the net amount of tax that must be paid to the State of California.
 

 [3]
 

 As recognized by the taxpayers, until 1955, the predecessor of this section, former section 17305, allowed as a deduction taxes measured by income or profits paid or accrued within the taxable year imposed by authority on any foreign country.
 

 [4]
 

 Section 11: “ Income taxes may be assessed to and collected from persons, corporations, joint-stock associations, or companies resident or doing business in this State, or any one or more of them, in such cases and amounts, and in such manner, as shall be prescribed by law.”
 

 [5]
 

 Amendment XVI: “The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration.
 
 ’ ’
 

 [6]
 

 Section 18001: “Subject to the following conditions, residents shall be allowed a credit against the taxes imposed by this part for net income taxes imposed by and paid to another state on income taxable under this part:
 

 “ (a) The credit shall be allowed only for taxes paid to the other state on income derived from sources within that state which is taxable under its laws irrespective of the residence or domicile of the recipient. ’ ’
 

 Prior to 1957, the section allowed a credit for taxes paid to foreign countries (Stats. 1957, ch. 215, § 1, p. 877).
 

 [7]
 

 Article I, section 8: “ The Congress shall have Power ... to regulate Commerce with foreign Nations. ...”
 

 
 *280
 
 Section 9: "No tax or duty shall be laid on Articles exported from any State.”
 

 Section 10: "No State shall, without the Consent of the Congress, lay Imposts or Duties on . . . Exports. ...”
 

 [8]
 

 Article V, paragraph 2 of the Treaty provides, so far as relevant: "The Parties undertake to cooperate in furthering the interchange and use of scientific and technical knowledge, particularly in the interests of increasing productivity and improving standards of living within their respective territories.” (4 U.S.T. 2063, 2068.)
 

 [9]
 

 We also note that a later Treaty between the United States and Japan, specifically dealing with the avoidance of double income taxation, relates only to the federal income tax (6 U.S.T. 150, 151).