KRAFT, INC., Appellant,

v.

IOWA DEPARTMENT OF REVENUE AND FINANCE, Appellee.

No. 89–1528.

Supreme Court of Iowa.

Feb. 20, 1991.

Reconsideration Denied March 19, 1991.

John V. Donnelly and Harold N. Schneebeck, Brown, Winick, Graves, Donnelly, Baskerville & Schoenebaum, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Harry M. Griger, Sp. Asst. Atty. Gen., and Marcia Mason, Asst. Atty. Gen., for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, SNELL, and ANDREASEN, JJ.

LARSON, Justice.

Kraft, Inc., a corporation subject to Iowa income tax, receives dividends from subsidiaries in foreign countries. Under Iowa's income tax statutes, these dividends are required to be included in Kraft's net income, even though dividends from domestic subsidiaries are not. Kraft complains that this violates the commerce clause of the United States Constitution and denies it equal protection under both the United States and Iowa Constitutions. The district court rejected these arguments, and so do we.

In 1981, the year in question, Kraft received substantial dividends from these subsidiaries from which the foreign countries had withheld their respective taxes. Also, the foreign subsidiaries themselves were taxed by the foreign countries on the earnings from which the dividends had been paid.

Sections 241 and 243 of the Internal Revenue Code, 26 U.S.C., allow taxpayer to deduct from its net income all dividends received from *domestic* subsidiaries. The reason is said to be that all of the domestic corporations' earnings have already been subjected to federal income tax. *United States v. Georgia R.R. & Banking Co.*, 348 F.2d 278, 283 (5th Cir.1965), *cert. denied,* 382 U.S. 973, 86 S.Ct. 538, 15 L.Ed.2d 465 (1966). Through Iowa Code section 422.35, which adopts the federal definition of net income, the dividends from a domestic subsidiary are likewise excluded from the Iowa income tax base. Dividends received from *foreign* subsidiaries, however, may not be deducted for federal income tax purposes, although the taxpayer is allowed to claim a *credit* against its federal income tax for the foreign taxes paid.

Iowa does not allow a credit for taxes paid to foreign countries, and therein lies the problem in this case: By adopting the federal formula for computing net income, Iowa allows a deduction for dividends received from domestic corporations, but it

does not allow a deduction or tax credit for those received from foreign subsidiaries. Kraft contends that this is unlawful discrimination.

Iowa income tax is imposed upon the portion of a taxpayer's "net income" attributable to its trade or business within Iowa. Iowa Code § 422.33.[1] Section 422.35 defines "net income" as "the taxable income before the net operating loss deduction, as properly computed for federal income tax purposes under the Internal Revenue Code of 1954...."[2]

Under the Iowa taxing system, businesses with multistate or multinational operations pay Iowa income tax on an apportioned basis. Under this method, the business divides its net income between Iowa and the other states or nations in which it does business. The taxpayer multiplies its total net income by a fraction, the numerator of which is the amount of Iowa-based income and the denominator of which is the total income earned by the taxpayer. Iowa Code § 422.33(1)(b); 701 Iowa Admin.Code 54.2. The resulting figure is the measure of the tax to be imposed as a result of the taxpayer's Iowa activities. *See Kelly–Springfield Tire Co. v. Iowa State Bd. of Tax Review,* 414 N.W.2d 113, 119 (Iowa 1987).

Kraft argues that the effect of including the foreign dividends in the denominator of this fraction is to tax those dividends; however, this is not actually correct. As the Supreme Court has noted,

> income that is included in the preapportionment tax base is not, by virtue of that inclusion, taxed by the State. Only the fraction of total income that the apportionment formula determines (by multiplying the income tax base by the apportionment fraction) to be attributable to Iowa's taxing jurisdiction is taxed by Iowa.

*Shell Oil Co. v. Iowa Dep't of Revenue,* 488 U.S. 19, 30, 109 S.Ct. 278, 284, 102 L.Ed.2d 186, 199 (1988).

In its 1981 federal income tax return, Kraft included the foreign dividends in its tax base, as required, and claimed a foreign tax credit against its federal income tax. In computing its Iowa tax base for 1981, however, Kraft deducted the foreign subsidiary dividends from its Iowa net income. It concedes this violates the Iowa tax statutes. The question is whether those statutes are constitutionally valid.

## I. *The Commerce Clause Argument.*

■ The United States Constitution gives Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes...." Art. I, § 8, clause 3. The commerce clause not only confers power on the federal government to regulate commerce but also limits state power to interfere with it. *Lewis v. BT Inv. Managers, Inc.,* 447 U.S. 27, 35, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702, 711 (1980). This limitation on state power is often referred to as the "negative implication" of the commerce clause. *New Energy Co. v. Limbach,* 486 U.S. 269, 273, 108 S.Ct. 1803, 1807, 100 L.Ed.2d 302, 308 (1988); L. Tribe, *American Constitutional Law* § 6–2, at 403 (2d ed. 1988).

■ The Supreme Court has articulated a four-part test to determine whether a state tax violates the commerce clause. A tax is valid under a commerce clause challenge

> when the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, *does not discriminate against interstate commerce,* and is fairly related to the services provided by the State.

*Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326, 331 (1977) (emphasis added). When the challenged state tax affects commerce *outside* the United States, as here, "a more extensive constitutional inquiry is required." *Japan Line, Ltd. v. County of Los Angeles,* 441 U.S. 434, 446, 99 S.Ct.

---

**1.** Unless otherwise specified, all references will be to the 1981 Code.

**2.** Section 422.35 also allows certain adjustments, none of which are relevant to this case.

1813, 1820, 60 L.Ed.2d 336, 346 (1979). When foreign commerce is involved, two additional inquiries must be made:

[F]irst, whether the tax ... creates a substantial risk of international multiple taxation, and, second, whether the tax prevents the Federal Government from "speaking with one voice when regulating commercial relations with foreign governments."

*Id.* at 451, 99 S.Ct. at 1823, 60 L.Ed.2d at 349. If a state tax contravenes either of these precepts, it is unconstitutional. *Id.* Kraft does not ask us to apply this test which is specifically applicable to foreign commerce; rather, it confines its argument to the third prong of *Complete Auto Transit*, claiming that Iowa's tax system unconstitutionally discriminates against foreign commerce.

■ State statutes are presumed to be constitutional. *Iowa Auto. Dealers v. State Appeal Bd.*, 420 N.W.2d 460, 462 (Iowa 1988). In addition, "[a]ll presumptions are in favor of the constitutionality of the statute and it will not be held invalid unless it is clear, plain and palpable that such decision is required." *City of Waterloo v. Selden*, 251 N.W.2d 506, 508 (Iowa 1977). *Accord Harden v. State*, 434 N.W.2d 881, 885 (Iowa), *cert. denied,* —— U.S. ——, 110 S.Ct. 194, 107 L.Ed.2d 149 (1989). This presumption in favor of constitutionality is especially strong where the statute was enacted to promote a public purpose and relates to taxation. *Lee Enters., Inc. v. Iowa State Tax Comm'n*, 162 N.W.2d 730, 739 (Iowa 1968).

■ The department of revenue argues that the Iowa tax structure does not unconstitutionally discriminate because it does not advantage any local Iowa activity at the expense of non-Iowa activities. According to the department, unlawful discrimination does not exist under the commerce clause unless the statute provides a direct commercial advantage to local business. *See Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 268, 104 S.Ct. 3049, 3053–54, 82 L.Ed.2d 200, 207 (1984); P. Hartman, *Federal Limitations in State and Local Taxation* § 2.19, at 50 (Supp.1990) ("A tax is generally said by the Court to be discriminatory when the taxing State provides a commercial advantage to local business at the expense of out-of-state business.").

Kraft agrees that, in the interstate context, the cases could be read to support the department's argument that some advantage to local business must be shown. It argues, however, that the rules are different in the case of *foreign* commerce. Kraft relies in part on *Hale v. Bimco Trading, Inc.*, 306 U.S. 375, 59 S.Ct. 526, 83 L.Ed. 771 (1939). In *Hale*, the Supreme Court invalidated a Florida statute which provided for the inspection of all imported cement and the payment of a fee for such inspection. The inspection and fee applied to cement brought into Florida from a foreign country, but not to domestic cement. The statute's preamble provided two justifications for the inspection of foreign cement and its attendant fees: first, public safety required that the cement sold in Florida must meet minimum standards, and second, the imported cement created unfair competition to Florida's cement industry.

The Supreme Court pointed out the defects in the public safety rationale: "That no Florida cement needs any inspection while all foreign cement requires inspection at a cost of fifteen cents per hundredweight is too violent an assumption to justify the discrimination here disclosed." *Id.* at 380, 59 S.Ct. at 528, 83 L.Ed. at 776. It noted, as to the second justification, that it was "a candid admission that the very purpose of the statute is to keep out foreign goods." *Id.* Thus, in *Hale*, the Florida statute gave Florida's cement industry a distinct, and unconstitutional, advantage over foreign commerce.

Kraft also relies on *Japan Line, Ltd.* to support its discrimination argument. In *Japan Line, Ltd.*, California's *ad valorem* property tax on Japanese-owned shipping containers was held to violate the commerce clause because it resulted in possible multiple taxation, thereby preventing the United States from "speaking with one voice" in regulating foreign affairs. *Id.* at 452, 99 S.Ct. at 1823, 60 L.Ed.2d at 350. *Japan Line, Ltd.* did not involve discrimi-

nation against foreign commerce, which is the basis of Kraft's commerce clause argument.

Although Supreme Court decisions are unclear whether such a local bias must be found when discrimination against foreign commerce is alleged, the authors of one article have stated:

Arguably, disparity between interstate and foreign commerce is not the evil that the commerce clause generally is supposed to prevent. The commerce clause may be viewed as a protection from local biases against either interstate or foreign commerce. Thus, it can be concluded that not only negative effects on protected commerce, but also positive effects on local commerce are necessary to find a statute unconstitutional under the commerce clause.

Tatarowicz & Mims–Velarde, *An Analytical Approach to State Tax Discrimination Under the Commerce Clause*, 39 Vand.L.Rev. 879, 941 (1986). In the commerce-clause challenge here, we hold that Kraft must show, as in the case of alleged interstate discrimination, that Iowa businesses receive a commercial advantage over foreign commerce due to Iowa's taxing scheme.

Kraft alleges that local Iowa businesses are advantaged because taxpayers which receive dividends from domestic subsidiaries are benefited in the form of a lower Iowa income tax than if dividends from both foreign and domestic subsidiaries were taxed alike. We do not subscribe to this argument; this "benefit" is not created at the disadvantage of out-of-state businesses. Kraft is incorrect in comparing Iowa businesses to each other; the question is whether Iowa businesses are benefited at the expense of foreign businesses. Because the Iowa tax does not differentiate between in-state or out-of-state taxpayers, no impermissible discrimination exists. This case is therefore factually distinguishable from *Hale*.

## II. *The Equal Protection Argument.*

Our court has recognized that Iowa Constitution, article I, section 6 places substan-

tially the same limitation on state legislation as does the equal protection clause of the fourteenth amendment. *See Hearst Corp. v. Iowa Dep't of Revenue & Fin.*, 461 N.W.2d 295, 304 (Iowa 1990); *Klein v. Department of Revenue & Fin.*, 451 N.W.2d 837, 842 (Iowa 1990); *Harden*, 434 N.W.2d at 885. Consequently, Kraft's challenges to the tax statutes under the United States and Iowa Constitutions will be addressed simultaneously.

A party challenging a statute under the equal protection clause has a heavy burden. *Bennett v. City of Redfield*, 446 N.W.2d 467, 474 (Iowa 1989); *Iowa S. Utils. Co. v. Iowa State Commerce Comm'n*, 372 N.W.2d 274, 279 (Iowa 1985); *Stracke v. City of Council Bluffs*, 341 N.W.2d 731, 734 (Iowa 1983). Kraft has

the burden to demonstrate beyond a reasonable doubt the act violates the [equal protection clause] and to point out with particularity the details of the alleged invalidity. To sustain this burden *[Kraft] must negative every reasonable basis which may support the statute.* Every reasonable doubt is resolved in favor of constitutionality.

*Selden*, 251 N.W.2d at 508 (citations omitted) (emphasis added).

We have applied the Supreme Court's "standard of rationality" in evaluating state economic regulations. *Hearst Corp.*, 461 N.W.2d at 304–06; *Bennett*, 446 N.W.2d at 474. In *Selden*, 251 N.W.2d at 509, we quoted *City of New Orleans v. Dukes*, 427 U.S. 297, 303–04, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511, 516–17 (1976):

When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations. Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and *require only that the classification challenged be rationally related to a legitimate state interest* .... [I]n the

local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment.

(Citations omitted) (emphasis added). Since no suspect classification or fundamental right is claimed in this case,[3] Iowa's taxing statute survives Kraft's equal protection challenge unless it is wholly arbitrary, having no rational relation to any legitimate state purpose. *See Hearst Corp.*, 461 N.W.2d at 305; *Klein*, 451 N.W.2d at 842; *Bennett*, 446 N.W.2d at 474; *Harden*, 434 N.W.2d at 885.

 Dividends from foreign subsidiaries are taxed differently from those received from domestic subsidiaries because Iowa bases "net income" on the taxable income figure reported on the federal income tax return. *See* Iowa Code § 422.35. As we said in *First National Bank of Ottumwa v. Bair*, 252 N.W.2d 723, 726 (Iowa 1977):

> The result is practical. The taxpayer is permitted to merely lift the figures off the federal return and transfer them to the Iowa franchise tax return. The Department of Revenue receives the benefit of the regulations and interpretations of the federal agency.

The coupling of Iowa net income with the federal formula is convenient for the taxpayer, prevents the taxpayer from spending time and money on complex forms, provides a saving to the state, allows the state to rely on federal regulation and interpretation, and provides the state with an inexpensive and quick way of verifying the accuracy of taxpayers' returns. We hold that the use of the federal net income figure for computing Iowa franchise tax "net income" is a legitimate purpose.

Kraft argues that Iowa's taxing scheme is not rationally related to achieving conformity with the federal system. This is because Iowa does not follow the Internal Revenue Code in allowing a tax credit to corporations who pay foreign taxes on foreign dividends. However, complete con-

formity to the federal tax system is not the legitimate purpose claimed. The legitimate state purpose is to couple Iowa "net income" with federal taxable income, with the resulting advantages outlined above. It is a familiar principle that a "statute is not invalid under the Constitution because it might have gone farther than it did." *Katzenbach v. Morgan*, 384 U.S. 641, 657, 86 S.Ct. 1717, 1727, 16 L.Ed.2d 828, 839 (1966) (quoting *Roschen v. Ward*, 279 U.S. 337, 339, 49 S.Ct. 336, 336, 73 L.Ed. 722, 729 (1929)).

We hold that the income tax statutes in question, Iowa Code §§ 422.33, 422.35, are not invalid under the equal protection clauses of either the United States or Iowa Constitution.

We find no error in the district court ruling and therefore affirm.

AFFIRMED.

---

**3.** Suspect classifications generally are based on race, alienage, or national origin. Fundamental rights include the right to vote, the right of interstate travel, and other rights, such as those

guaranteed by the First Amendment, which are considered essential to individual liberty. *Bennett*, 446 N.W.2d at 473 (citations omitted).